**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  10-cv-01452-WJM-KLM

RAY E. SAMPLE,

      Plaintiff,

v.

CITY OF SHERIDAN, a municipality,
ARTHUR J. KRIEGER, City Manager, individually and in his official capacity,

      Defendants.

_____

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS AND IN THE
ALTERNATIVE MOTIONS FOR SUMMARY JUDGMENT**
_____

Plaintiff Ray E. Sample brings this action against Defendants the City of Sheridan, Colorado and Sheridan City Manager Arthur J. Krieger for employment discrimination and wrongful termination.  Before the Court are Defendants' Motions to Dismiss and in the Alternative Motions for Summary Judgment (the "Motions").  (ECF Nos. 22, 23.)

For the reasons set forth below, Defendants' Motions are GRANTED in part and DENIED in part.

## I.  BACKGROUND

**A.   Factual Background**

The following facts are taken from the record and are undisputed:

Plaintiff was the City of Sheridan's (the "City") Chief of Police from 1996 until he

retired from law enforcement in April of 2008 and became the City's Economic

Development Director.[1]  (Transcript of Appeals Hearing, Vol. I, at 201-03, attached to

Sheridan Motion, Ex. A.)  In 2008, Plaintiff also became the Executive Director for the

Sheridan Urban Renewal Authority ("SRA").  (*Id*.)  The City is a home rule municipality

established and existing under the Constitution and laws of the State of Colorado.

(Sheridan Municipal Code, § 1.4.)  Defendant Arthur J. Kieger became the interim City

Manager in July of 2008 and was named the permanent City Manager in December of

that year.  (Transcript of Appeals Hearing, Vol. I, at 6.)

On February 18, 2009, Defendant Krieger became aware of what he believed

were issues regarding the City's Fire and Police pension fund.  (Dep. of A. Krieger,

179:5-25, 180:1-16.)  In response, he scheduled interviews with Plaintiff and Fire Chief

Ron Carter, a pension board Trustee.  (Transcript of Appeals Hearing, Vol. I, at 29,

42-43.)  On March 4, 2009, Defendant Krieger and Sheridan Chief of Police Marco

Vasquez had an interview with Plaintiff regarding the Fire and Police pension fund.  (*Id*.

at 30-31.)

On March 6, 2009, Plaintiff authored a letter to Sheridan Mayor Mary Carter,

Chairperson of the SRA, alleging that the City's request for reimbursement from the

SRA of administrative costs of 25% of salary and benefits for administrative staff was

fraudulent, bordered on official misconduct, and unethical.  (Administrative Hearing

Order, at 5, attached to Sheridan Motion, Ex. B.)  Plaintiff hand delivered a copy of the

---

[1]      Plaintiff was 47 years of age when his employment with the City was terminated in 2009.  (Plaintiff's Charge of Discrimination, attached to Response to Sheridan Motion, Ex. 22.)

letter to Mayor Carter, and believes he gave a copy to the City Attorney William Hayashi.  (Transcript of Appeals Hearing, Vol. I, at 274-75.)

On March 10, 2009, Defendant Krieger and Chief Vasquez had a follow-up meeting with Plaintiff regarding the pension fund. (Dep. of Krieger, 207:22-25, 208:1-3.)  At this meeting, Defendant Krieger informed Plaintiff that he was going to hire an outside investigator to look into the history of the fund. (Transcript of Appeals Hearing, Vol. I, at 141; Dep. of Krieger, 210:11-14.)

On March 11, 2009, Plaintiff's attorney submitted a second letter to Mayor Carter and Mr. Hayashi, alleging that Defendant Krieger had engaged in a variety of improper actions including but not limited to interfering with fiduciary obligations, age discrimination, and retaliation for whistle blowing.  (Administrative Hearing Order, at 6.)

Defendant Krieger subsequently retained the accounting firm of Clifton Gunderson, LLP to investigate the allegations in Plaintiff's March 6, 2009 letter.  (*Id.* at 106.)  Clifton Gunderson found no merit to Plaintiff's allegations.  (Transcript of Appeals Hearing, Vol. II, at 120-121, 124.)  Defendant Krieger also retained attorney Peter Doherty to investigate the allegations in the March 6, 2009 letter, as well as the allegations in the March 11, 2009 letter.  (Transcript of Appeals Hearing, Vol. I, at 110, 137-38.)  Mr. Doherty found no support for Plaintiff's allegations.  (*Id.*, at 140-143; Administrative Hearing Order, at 28.)  On March 19, 2009, Defendant Krieger placed Plaintiff on paid administrative leave.  (Transcript of Appeals Hearing, Vol. I, at 307.)

On March 24, 2009, members of the City Council and Defendant Krieger received an e-mail from a "Timothy Smith," whose identity remains unknown. (Administrative Hearing Order, at 7.)  The e-mail alleged that Plaintiff had been the

3

subject of an investigation by the Colorado Bureau of Investigation ("CBI") as a result of allegations that he had an improper sexual relationship with a former Police Explorer. (*Id*.)  Chief Vasquez subsequently verified that the CBI had investigated Plaintiff regarding the allegations contained in the anonymous e-mail.  (Transcript of Appeals Hearing, Vol. I, at 164-165.)  However, the CBI did not file criminal charges against Plaintiff.  (*Id*.; Dep. of M. Vasquez, 151:13-15.)

Defendant Krieger prepared a Pre-Disciplinary Conference Notice dated May 19, 2009, and instituted a pre-disciplinary conference against Plaintiff.  (Transcript of Appeals Hearing, Vol. I, at 307.)  On June 4, 2009, Plaintiff attended the pre-disciplinary conference with his counsel, after which Defendant Krieger issued his Disciplinary Findings and Decision.  (Disciplinary Findings and Decision, at 2-3, attached to Sheridan Motion, Ex. E.)  Defendant Krieger found that Plaintiff violated various ethical and other rules relating to: (1) Police and Fire Pension matters; (2) the March 6, 2009 letter to Mayor Carter regarding the SRA; (3) the March 11, 2009 letter to Mayor Carter and City Attorney William Hayashi; and (4) the CBI investigation.  (Affidavit of A. Krieger; Personnel Manual, § 8.4; Disciplinary Findings and Decision, at 2-3.)  Defendant Krieger then terminated Plaintiff's employment with the City.  (Affidavit of Krieger; Disciplinary Findings and Decision, at 4; Administrative Hearing Order, at 2.)

Plaintiff subsequently appealed Defendant Krieger's termination decision. (Affidavit of Krieger; Transcript of Appeals Hearing, Vol. I, at 308.)  Defendant Krieger scheduled the appeals hearing with Administrative Hearing Officer Kristin Brown, Esq., and a hearing was held on September 28 and 29, 2009.  (Administrative Hearing Order, at 1.)  On October 13, 2009, Hearing Officer Brown affirmed Defendant Krieger's

4

decision to terminate Plaintiff's employment, finding that there was competent evidence to support such a decision.  (Administrative Hearing Order, at 31.)

### B.    Procedural History

Plaintiff filed this action on June 21, 2010.  (ECF No. 1.)  Plaintiff brings employment discrimination and wrongful termination claims against Defendants.  (*Id*.) Specifically, Plaintiff brings claims for: (1) violation of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C.A. § 621, *et seq*.; (2) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq*.; (3) wrongful termination in violation of public policy; (4) intentional interference with financial advantage; (5) unlawful denial of Consolidated Omnibus Budget Reconciliation Act ("COBRA") benefits; and (6) implied breach of contract/promissory estoppel.  (*Id*.)  Plaintiff alleges that Defendants terminated his employment with the City due to age discrimination and in retaliation for reporting improprieties.  (*Id*.)

On April 8, 2011, Defendants filed two separate Motions to Dismiss and in the Alternative Motions for Summary Judgment.  (Sheridan Motion (ECF No. 22); Krieger Motion ( ECF No. 23.))  Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56 on all of Plaintiff's claims, and seek to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1).  (*Id*.)

On March 20, 2012, Plaintiff filed his Responses to Defendants' Motions. (Response to Sheridan Motion (ECF No. 43); Response to Krieger Motion (ECF No. 44.))  On April 3, 2012, Defendants filed their Reply Briefs in Support of their Motions. (Sheridan Reply (ECF No. 45); Krieger Reply (ECF No. 46.))

5

These Motions are now ripe for resolution.[2]

## II. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Where the non-movant

---

[2]     While the Motion to Dismiss portions of Defendants' Motions are before the Court, Defendants' Motions to Dismiss are subsumed by their Motions for Summary Judgment, and the Court's ruling on Defendants' Motions for Summary Judgment effectively moot Defendants' Motions to Dismiss.  *See Brown v. Bd. of Educ. of Pueblo Sch. Dist. No. 1*, No. 05-cv-02079, 2007 WL 389947, at *2 (D. Colo. Feb. 1, 2007).  Accordingly, this Order constitutes the Court's findings on the entirety of Defendants' Motions.

bears the burden of proof at trial, the non-movant must then point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

### III.  ANALYSIS

### A.    Violations of the ADEA (First Claim)

Defendants argue that they had lawful cause to terminate Plaintiff's employment with the City, and that Plaintiff cannot establish a *prima facie* case of age discrimination. (Sheridan Motion at 11-23.)  Plaintiff refutes Defendants' arguments.  (Response to Sheridan Motion at 16-27.)

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The ADEA protects workers "who are at least 40 years of age," 29 U.S.C. § 631(a), and was passed "'to promote employment of older persons based on their ability rather than age' and 'to prohibit arbitrary age discrimination in employment.'"  *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1276 (10th Cir. 2005) (quoting 29 U.S.C. § 621(b)).

In order to establish a *prima facie* job termination claim based on age discrimination under the ADEA, a plaintiff must show that: (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was either not filled or filled by a younger person.  *See Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 920-21 (10th Cir. 2004) (citing *McKnight v. Kimberly Clark*

*Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)).

After a plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's discharge.  *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Once the employer comes forward with a facially non-discriminatory reason for the adverse employment decision, the plaintiff is afforded a fair opportunity to demonstrate that the assigned reason for the allegedly discriminatory act was a pretext or discriminatory in its application.  *Id*. at 804; *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997).  "A plaintiff produces sufficient evidence of pretext when she shows 'such weaknesses, implausibilities, inconsistencies, incoherenceies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"  *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010) (quoting *Jaramilo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005)).

Defendants appear to only challenge the third prong of Plaintiff's *prima facie* case–namely, Defendants dispute that Plaintiff was doing satisfactory work because they argue his employment with the City was terminated "due to his violation of several provisions of the Personnel Manual, including insubordination, refusal to cooperate and inadequate job performance."[3]  (Sheridan Motion at 22.)  Defendants further argue that

---

[3]     Defendants' argument that Plaintiff has not demonstrated that he was treated less favorably than similarly situated younger employees is not an element of a *prima facie* case for a job termination claim based on age discrimination.

these violations were legitimate, non-discriminatory reasons for Plaintiff's discharge. *See McDonnell-Douglas Co.*, 411 U.S. at 802.  Plaintiff counters that he has established a *prima facie* case under the ADEA, and that his alleged violations were pretext because Plaintiff was actually discharged due to age discrimination, and in retaliation for reporting financial improprieties.  (Response to Sheridan Motion at 16-27.)

    The Court finds that Plaintiff has established a *prima facie* case of age discrimination, and has put forth sufficient evidence to create a genuine dispute of fact whether Defendants' proffered basis for termination was a pretext for age discrimination.  Plaintiff has submitted evidence that: (1) Fire Chief Ron Carter gave similar responses to Defendant Krieger regarding the pension fund issues, but was not disciplined (Appeals Hearing Transcript, Vol. I, Krieger Testimony, 32:2-7; Appeals Hearing Transcript, Vol. II, 14:5-9, 15:2-6; Dep. of A. Krieger, 212:18-21); (2) Plaintiff acted appropriately and in good faith when he authored his March 6, 2009 and March 11, 2009 letters reported alleged financial improprieties (Appeals Hearing Transcript, Vol. II, 49:16-17, 51:1-3, 65:15-22; C.R.S. §31-25-112); and (3) Plaintiff did not intentionally conceal the CBI investigation, and did not violate provisions of the City's Personnel Manuel (Dep. of A. Krieger, 240:2-25; Appeals Hearing Transcript, Vol. I, 155:13-25; 156:1-2; Appeals Hearing Transcript, Vol. II, 39:9-12; Dep. of R. Sample, 248:5-11; 249:19-25).

    Construing this evidence in the light most favorable to Plaintiff, a jury could reasonably find that Defendants' proffered basis for Plaintiff's job termination was but a pretext for unlawful age discrimination.  *See Miller v. Eby Realty Group LLC*, 396 F.3d

9

1105, 1111 (10th Cir. 2005) (question of fact for jury when employer's proffered reason for termination is called into question).  Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's ADEA claim (First Claim) is denied.

**B.    Age Retaliation Claim (Second Claim)**

Defendants assert that Plaintiff has not made out a *prima facie* case for age-based retaliation.  (Sheridan Motion at 23-24.)  Plaintiff counters that he has established all the elements of a *prima facie* age retaliation claim.

In order to make out a *prima facie* case of retaliation, a plaintiff must present evidence that: "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between his opposition and the employer's adverse action."  *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1215 (10th Cir. 2010) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007)).  "The requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  *McGarry v. Board of County Com'rs of Cnty. of Pitkin*, 175 F.3d 1193, 1201 (10th Cir. 1999) (quoting *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

The only element that Defendants challenge is the existence of a causal nexus between Plaintiff's actions and his employment termination.  (Sheridan Motion at 23-24.)  In response, Plaintiff argues that he has established a *prima facie* case because the temporal proximity of his firing to his written complaints of discrimination create an

inference of retaliation.  (Response to Sheridan Motion at 27-30.)

Temporal proximity between protected activity and the alleged resulting adverse action may combine with additional circumstantial evidence to create a fact issue as to pretext.  *See City of Prairie Village v. Butler*, 172 F.3d 736, 752 (10th Cir. 1999). Moreover, temporal proximity can contribute to an inference of retaliation.  *See Trujillo v. Pacificorp*, 524 F.3d 1149, 1157 (10th Cir. 2008); *City of Prairie Village v. Butler*, 172 F.3d 736, 749 (10th Cir. 1999) (temporal proximity between request for accommodation under the ADEA and decline in employer's satisfaction with work performance contributed to inference of discrimination).

Here, Plaintiff was placed on administrative leave on March 19, 2009, within 8 days after his complaint of possible age discrimination in his March 11, 2009 letter. (Transcript of Appeals Hearing, Vol. I, at 307.)  As such, the tight temporal proximity between Plaintiff's discrimination complaint and his adverse employment action, combined with the dispute of fact as to the reasons for Plaintiff's job termination, in the Court's view can create an inference of retaliation in this case.  *See Trujillo*, 524 F.3d at 1157.  Therefore, Plaintiff has shown a genuine dispute of fact as to whether Defendants' proffered basis for termination was pretext for retaliation, and Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim (Second Claim) is denied.

## C.     Wrongful Termination in Violation of Public Policy Claim (Third Claim)

Defendants argue that Plaintiff's state tort claim for wrongful termination fails because: (1) it is barred under the Colorado Governmental Immunity Act ("CGIA"), and (2) it fails as a matter of law.  (Krieger Motion at 3-8.)  Plaintiff refutes both of these

arguments.  (Response to Krieger Motion at 3-10.)

The Court first turns to the question of immunity under the CGIA.  The purpose of the CGIA is to protect public employees, public entities, and, by extension, taxpayers from unlimited liability.  C.R.S. § 24-10- 102.  The CGIA provides that a public entity or a public employee performing duties within the scope of his employment "shall be immune from liability in all claims for injury which lie in tort or could lie in tort …"  C.R.S. § 24-10-106(a); *accord* § 24-10-105(1).  However, pursuant to C.R.S. §24-10-105, "[no] public entity shall be liable for such actions except as provided in this article, and no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton."  Willful and wanton conduct has been defined as conduct that was purposefully committed and was done heedlessly without regard to the rights of the plaintiff or an intention or desire to harm the plaintiff seriously through doing something unjustified or revengeful or with an intent to cause damage or oppression.  *See Bonidy v. Vail Valley Center for Aesthetic Dentistry, P.C.*, 232 P.3d 277, 286 (Colo. App. 2010).

The Court finds that there is a genuine dispute of fact as to whether Defendants terminated Plaintiff's employment in a willful and wanton manner.  Plaintiff introduced evidence that Defendant Krieger's conduct could be viewed as in violation of state and federal law, exceeded his authority, and was not within the City's customary practices and policies.  (Affidavit of Mayor Carter; Hayashi E-Mail and Job Description, Chain of Command, attached to Response to Sheridan Motion, Ex. 2; Dep. of R. Sample, 170:13-22; 240:6-11.)  The City can also be held liable for an unlawful decision by one

12

of its officials so long as that official possessed final authority with respect to the action. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir. 1993) ("a municipality is liable for the acts of its final policymaking authority") (internal quotes and citations omitted).  There is evidence that Defendant Krieger was acting as the City Manager for the City while engaging in this conduct, and that he possessed final authority to terminate Plaintiff's employment.  (Transcript of Appeals Hearing, Vol. I, at 6.)  As such, Plaintiff's claim for wrongful termination in violation of public policy is not barred by the CGIA.

The Court thus turns to Defendants' argument that they are entitled to judgment as a matter of law on Plaintiff's wrongful termination claim.  Colorado recognizes a claim for relief for wrongful discharge in violation of public policy.  *See Wisehart v. Meganck*, 66 P.3d 124, 127 (Colo. App. 2002).  Under the public policy exception, an employee may recover damages for wrongful discharge if the discharge was based on a refusal to engage in conduct that would violate public policy, or participation in conduct that is protected or encouraged by public policy.  *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666-67 (Colo. 1999) (*en banc*); *see also Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992).

As described above, Plaintiff has put forth sufficient evidence to create a genuine issue of material fact as to the reason for his job termination.  Plaintiff's evidence creates a dispute of fact as to whether he was fired for complaining of age discrimination and alleged financial improprieties, both of which are encouraged by public policy.  *See Coors Brewing Co.*, 978 P.2d at 666-67; *see also* 29 U.S.C. §

623(a)(1).  Accordingly, Defendants' Motion for judgment as a matter of law on

Plaintiff's claim for wrongful termination in violation of public policy (Third Claim) is

denied.

**D.      Intentional Interference with Financial Advantage Claim (Fourth Claim)**

Defendants argue that Plaintiff's intentional interference with financial advantage

claim is barred under the CGIA, and that they are entitled to summary judgment

because Plaintiff did not have an actual employment contract with the City.  (Krieger

Motion at 8-9.)  Defendants also argue that there is no evidence that Defendant Krieger

interfered with Plaintiff's job performance.  (*Id*.)  In response, Plaintiff asserts that he

had an actual employment contract with Defendants, and that Defendant Krieger

intentionally induced the City to breach that contract.  (Response to Krieger Motion at

10-12.)

For the same reasons stated above, the Court finds that Plaintiff's intentional

interference with financial advantage claim is not barred by the CGIA.  Therefore, the

Court turns to the merits of Plaintiff's intentional interference claim.  A claim for

intentional interference with financial advantage is analyzed as a claim for intentional

interference with contractual relations.  *See Transamerica Premier Ins. Co. v. K & S

Const*., 850 F. Supp. 930, 934 (D. Colo. 1994).  The tort of intentional interference with

contractual relations is committed when one intentionally and improperly interferes with

the performance of a contract between another person and a third person by inducing

or otherwise causing the third person not to perform the contract.  *See Westfield Dev.

Co. v. Rifle Inv. Assoc*., 786 P.2d 1112 (Colo. 1990). To establish tortious interference

with a contract, a plaintiff must prove that: (1) plaintiff had a contract with another party; (2) the defendant knew or should have known of such contract's existence; (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (4) the defendant's actions caused the plaintiff to incur damages. *See Telluride Real Estate Co. v. Penthouse Affiliates, LLC*, 996 P.2d 151 (Colo. App. 1999).

The Court agrees with Defendants that Plaintiff's intentional interference claim fails because Plaintiff did not have an actual contract with the City.[4]  Plaintiff contends that the City had a contract known as the "Agreement Between the City of Sheridan and the Sheridan Redevelopment Agency Regarding Personnel Services" (the "SRA Agreement") that constitutes Plaintiff's employment contract with the City.  (Response to Krieger Motion at 10-11.)  However, the SRA Agreement is solely a contract between the City and the SRA, and states that the City's Director of Economic Development shall serve as the SRA's Executive Director.  (Affidavit of W. Hayashi, at ¶ 1.)  Further, the SRA Agreement specifically states that at all times the Director of Economic Development, even when performing the job duties of the SRA Executive Director, is a City employee.  (*Id*.)  Plaintiff's name does not appear anywhere in the SRA Agreement, nor does it nor make any promises of employment to Plaintiff.  (*Id*.) Therefore, the SRA Agreement is an agreement between the SRA and the City, and is not an express employment contract between Plaintiff and the City.

---

[4]      Plaintiff does not argue that he satisfies the elements of his intentional interference with contractual relations claim based on an implied contract theory.

Because Plaintiff did not have an actual contract with Defendants, his intentional interference with contractual relations claim fails as a matter of law.  *See William v. Burns*, 540 F. Supp. 1243, 1251 (D. Colo. 1982) (motion for summary judgment was granted because plaintiff failed to present evidence of an existing contract).  Therefore, Defendants' Motion for Summary Judgment on Plaintiff's intentional interference with contractual relations claim (Fourth Claim) is granted.

**E.      Unlawful Denial of COBRA Benefits Claim (Fifth Claim)**

Defendants argue that Plaintiff is precluded from bringing his claim for COBRA benefits because he did not first exhaust his administrative remedies.  (Sheridan Motion at 25-27.)  Plaintiff does not dispute that he has not exhausted his administrative remedies, but asserts that the administrative exhaustion doctrine does not apply here. (Response to Sheridan Motion at 30-32.)

COBRA mandates that employers give former employees the opportunity to continue coverage under the employer's group health plan if a qualifying event occurs. *See* 29 U.S.C. § 1161.  Petitioners seeking COBRA benefits may do so under the terms of the Employee Retirement Income Security Program ("ERISA").  Although ERISA does not expressly require claimants to exhaust administrative remedies before bringing suit in federal court, ERISA Section 503 provides that every benefit plan shall establish an administrative review procedure for "any participant whose claim for benefits has been denied ..."  29 U.S.C. § 1133.  Thus, courts have applied this requirement as a matter of "judicial discretion."  *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1263 (10th Cir. 1998) (internal quotation and citation omitted).

16

Plaintiff has submitted evidence that he was denied the full extent of his COBRA benefits.  In *Morales-Cotte v. Cooperativa de Ahorro y Credito Yabucoena*, 73 F. Supp. 2d 153, 159-60 (D.P.R. 1999), the United States District Court for the District of Puerto Rico examined a similar denial of COBRA benefits and found that the exhaustion requirement applies only where the matter in contention concerns an interpretation of the terms of the plan ("plan-based" claims), and not the terms of the statute itself ("statute-based" claims).  The *Morales-Cotte* Court so reasoned because "the only statutory mandate for requiring claimants to exhaust administrative remedies, Section 503 of ERISA, speaks solely of establishing a procedure for the review of a denial of a claim for benefits under a group health plan (plan-based claims)."[5]  *Id*.  "[T]here is simply no statutory basis for an administrative exhaustion requirement in the context of statute-based claims.  Further, although requiring administrative exhaustion of both plan-based and statute-based claims may have the salutary effect of reducing the number of cases to reach the federal courts, that is simply not sufficient justification for the federal courts to abdicate their duty to adjudicate questions involving the interpretation of federal law in the absence of some statutory directive."  *Id*.

The Court agrees with the reasoning in *Morales-Cotte* and finds that an exhaustion of administrative remedies is not required when a plaintiff's claim for denial of COBRA benefits is based on a statutory violation of ERISA.  Here, neither party has

---

[5]      In accordance with the applicable regulations, every employee benefit plan shall: (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in matter calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.  29 U.S.C. § 1133.

referred to or proffered any argument regarding a plan-based denial of COBRA

benefits.  The Court therefore concludes that the parties at least implicitly acknowledge

that the allegedly unlawful denial of COBRA benefits claim in this case is statutorily

based.  As a consequence, following the reasoning and analysis in *Morales-Cotte*, the

Court holds that Plaintiff did not need to exhaust his administrative remedies before

bringing a claim in this court for denial of COBRA benefits.

Defendant also argues that Plaintiff is not entitled to COBRA benefits because

he was fired for "gross misconduct."  (Sheridan Motion at 27-28.)  However, as

described above, a genuine dispute of fact exists as to the cause of Plaintiff's job

termination.  As such, Defendants' Motion for Summary Judgment on Plaintiff's COBRA

benefits claim (Fifth Claim) is denied.

**F.      Implied Breach of Contract/Promissory Estoppel Claim (Sixth Claim)**

Defendants argue that Plaintiff's implied breach of contract/promissory estoppel

claim fails as a matter of law because: (1) Plaintiff did not have an actual or implied

contract with the City, and (2) Defendants followed the disciplinary procedures outlined

in the City's Personnel Manual and, therefore, there is no basis for Plaintiff's promissory

estoppel claim.  (Krieger Motion at 10-14.)

The elements for breach of contract under Colorado law are: (1) the existence of

a contract; (2) performance by the plaintiff or some justification for nonperformance; (3)

failure to perform the contract by the defendant; and (4) resulting damages to the

plaintiff.  *See PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D.

Colo. 2009) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

"Under Colorado law, an individual hired for an indefinite period of time is an at-will employee whose employment can be terminated by either party without cause and without notice. Generally, an at-will employee's termination will not give rise to a cause of action." *Orback v. Hewlett-Packard Co.*, 909 F. Supp. 804, 808 (D. Colo. 1995) (citing *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)). "An employer may be held liable for the discharge of an otherwise at-will employee, however, where an implied contract arises out of company policy or employment manuals, or where an employee relies on the policies and manuals to his detriment." *Id*. (internal citation omitted); *see also Vasey v. Martin Marietta Corp*., 29 F.3d 1460, 1464 (10th Cir. 1994).

Under an breach of an implied contract claim, evidence must demonstrate that the employer intended to make an offer to the employee: "[T]hat is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Vasey*, 29 F.3d at 1464 (internal quotations omitted). "An offer in the form of an employment manual must be communicated to the employee to be effective, and must be sufficiently definite to enable the court to determine whether the contract has been performed." *Orback*, 909 F. Supp. at 808 (internal quotations and citations omitted). "Once the employee establishes the employer's intent to be bound by its procedures, he must go on to show his continued employment constituted acceptance of and consideration for those procedures." *Id*. (internal citations omitted).

While the existence of an implied contract is normally a question of fact for a jury, the issue may be decided as a matter of law if: (1) there is a valid disclaimer stating the policies are not intended to create a contract, *see Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517, 1522 (D. Colo.1987); (2) the alleged promises are nothing more than "vague assurances," *see Vasey*, 29 F.3d at 1464–65; or (3) if the undisputed facts otherwise "indicate[ ] that the employer did not intend the manual to operate as a contractual offer to the employee." *Id*.

As the Court has already found that Plaintiff did not have an actual employment contract with the City, the only question left for this Court to consider in this regard is whether Plaintiff had an implied contract of employment.  Plaintiff argues that the City's Personnel Manual was an implied contract between himself and the City.  (Response to Krieger Motion at 12-15.)  Plaintiff further asserts that the Personnel Manual's "policies are very specific in the areas of the Disciplinary Process, Disciplinary Action and Disciplinary Policies", and thus created an implied contract.  (*Id*.)

The City's Personnel Manual specifically states that the handbook does not create an implied contract.[6]  (Personnel Manual, § 1.3.)  This disclaimer is found in the Introduction of the Personnel Manual.  (*Id*.)  Moreover, the disclaimer is in bold capitalized language, which highlights it from the rest of the language on the page.  (*Id*.).  Plaintiff has submitted no evidence that Defendants considered the Personnel

---

[6]     The Personnel Manual reads:  THIS HANDBOOK DOES NOT CONSTITUTE A CONTRACTUAL ARRANGEMENT OR AGREEMENT BETWEEN THE CITY OF SHERIDAN AND ITS EMPLOYEES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, DURATION OF THE EMPLOYMENT RELATIONSHIP OR TERMS AND CONDITIONS OF EMPLOYMENT.  (Personnel Manual, § 1.3.)

Manual to be an implied contract.  Therefore, contrary to Plaintiff's assertion, the City's

Personnel Manual did not create an implied contract, and Plaintiff's claim for breach of

an implied contract fails as a matter of law.  *See Baldwin v. Key Equipment Finance,*

*Inc.*, 05-cv-00502, 2006 WL 2016843, at *6 (D. Colo. July 17, 2006) (citing *Jaynes v.*

*Centura Health Corp.*, 148 P.3d 241, 248 (Colo. App. 2006)); *Therrien*, 670 F. Supp. at

1521-23 (D. Colo. 1987) (denying claims based on implied contract in handbook where

the employer clearly and conspicuously disclaimed intent to enter into a contract limiting

the right to discharge employees).

Finally, the Court turns to Plaintiff's promissory estoppel claim.  An "employee [is]

entitled to enforce [] termination procedures under a theory of promissory estoppel if he

can demonstrate that the employer should reasonably have expected the employee to

consider the employee manual as a commitment from the employer to follow the

termination procedures, that the employee reasonably relied on the termination

procedures to his detriment, and that injustice can be avoided only by enforcement of

the termination procedures."  *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712

(Colo. 1987).

Plaintiff argues that he has a valid promissory estoppel claim because

Defendants did not provide Plaintiff with progressive discipline and failed to follow

proper disciplinary procedures.  (Response to Krieger Motion at 17.)  Defendants

counter that they followed all the disciplinary procedures outlined in the Personnel

Manual.

Section 8 of the Personnel Manual outlines the disciplinary procedures that must

be taken when disciplining a City employee.  Under § 8.4 of the Manual, an employee

21

must be provided with written notice of the proposed disciplinary action and must be

provided with an opportunity to respond to the charge(s) at a pre-disciplinary

conference. (Personnel Manual, § 8.4.)  The employee may then appeal to the City

Manager. (*Id*., § 8.5.)  If the appeal concerns the decision of the City Manager, than an

independent hearing officer will be chosen to hear the appeal.  (*Id*.)  The hearing officer

shall affirm, modify or reverse, in whole or in part the decision of the Department Head

within ten business days of the hearing.  (*Id*.)  The Manual further states that "[t]he

actual discipline imposed is up to the discretion of the supervisory personnel."  (*Id*., §

8.2.)

    Defendants followed these procedures in bringing disciplinary action against

Plaintiff.  Plaintiff was provided a Pre-Disciplinary Conference Notice, and was afforded

the opportunity to dispute any information at a pre-disciplinary conference.  (Transcript

of Appeals Hearing, Vol. I, at 307.)  Defendant Krieger subsequently issued his

Disciplinary Findings and Decision, and Plaintiff appealed his dismissal.  (Affidavit of A.

Krieger; Personnel Manual, § 8.4; Disciplinary Findings and Decision, at 2-3.)  A

hearing was conducted were Plaintiff had an opportunity to present evidence and to

cross-examine witnesses, and an Administrative Hearing Officer affirmed Defendant

Krieger's decision to terminate Plaintiff's employment.  (Affidavit of Krieger; Transcript

of Appeals Hearing, Vol. I, at 308; Administrative Hearing Order.)

    Accordingly, the Court finds that there is no genuine dispute that all procedural

requirements were met during the disciplinary process against Plaintiff.  Plaintiff himself

testified during the administrative hearing that all processes and procedures had been

followed and that he just disagreed with the final decision.  (Transcript of Appeals

Hearing, Vol. I, at 308.)  As such, Plaintiff's promissory estoppel claims fails as a matter of law.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendants' Motions to Dismiss and in the Alternative Motions for Summary Judgment (ECF Nos. 22, 23) are GRANTED IN PART and DENIED IN PART;

2.    Defendants' Motion for Summary Judgment on Plaintiff's Age Discrimination in Employment Act ("ADEA") violation claim (First Claim) is DENIED;

3.    Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim (Second Claim) is DENIED;

4.    Defendants' Motion for Summary Judgment on Plaintiff's wrongful termination in violation of public policy claim (Third Claim) is DENIED;

5.    Defendants' Motion for Summary Judgment on Plaintiff's intentional interference with financial advantage claim (Fourth Claim) is GRANTED;

6.    Defendants' Motion for Summary Judgment on Plaintiff's unlawful denial of COBRA benefits claim (Fifth Claim) is DENIED; and

7.    Defendants' Motion for Summary Judgment on Plaintiff's implied breach of contract/promissory estoppel claim (Sixth Claim) is GRANTED.

Dated this 13th day of April, 2012.

BY THE COURT:

_____
William J. Martinez
United States District Judge